UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JUSTIN ROOSMA and ELIZABETH ROOSMA,<br><br>Plaintiff,<br>v.<br>PIERCE COUNTY, CORRECT CARE SOLUTIONS LLC, PAUL PASTOR, and PATTI JACKSON-KIDDER,<br><br>Defendants. | CASE NO. 3:16-cv-05499-RJB<br><br>ORDER ON DEFENDANTS PIERCE COUNTY, PAUL PASTOR, AND PATTI JACKSON-KIDDER'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FRCP 12(B)(6) |

THIS MATTER comes before the Court on the Motion to Dismiss Plaintiffs' Complaint Pursuant to FRCP 12(b)(6) (Dkt. 15), filed by Defendants Pierce County, Paul Pastor, and Patti Jackson-Kidder (collectively, "the County Defendants"). Dkt. 15. Defendant Corrective Care Solutions joins the County Defendants' motion as to Count Three, Count Four, and Count Five. Dkt. 17. The Court has considered Plaintiffs' Response (Dkt. 26), the County Defendants' Reply (Dkt. 27), and the remainder of the file herein.

## I.   BACKGROUND

A. Facts.

The Complaint alleges the following facts, which are abridged for brevity. When booked into Pierce County Jail on April 28, 2014, Plaintiff Justin Roosma completed medical paperwork,

including a request for medications for severe anxiety and Restless Leg Syndrome. Dkt. 1 at ¶¶3.1, 3.2. After Plaintiff J. Roosma suffered two seizures on a date not alleged, Plaintiff J. Roosma bailed out of jail, but he was remanded into custody on June 17, 2014, when he was again denied medications. *Id*. at ¶¶3.6, 3.7. On July 21, 2014, in a fit of Restless Leg Syndrome, Plaintiff J. Roosma was thrown out of his top bunk bed and suffered serious injuries, including brain trauma, a severe concussion, skull fracture, and a wrist fracture. *Id*. at ¶¶3.12, 3.13, 3.15. The wrist was not cast or set properly, and Plaintiff J. Roosma's complaints for additional treatment were ignored. *Id*. at ¶¶3.16-3.18. On July 26, 2014, Plaintiff J. Roosma received medicine for his Restless Leg Syndrome but did not receive prescribed antibiotics or pain medicine, despite excruciating pain and grievances filed. *Id*. at ¶¶3.20, 3.22.

On July 29, 2014, Plaintiff J. Roosma was transferred to another jail facility outside of Pierce County, where he received treatment and medications while still in custody. *Id*. at ¶3.23. Since his release from custody, Plaintiff J. Roosma has continued to suffer from his injuries, including traumatic brain injury ("TBI") symptoms and a permanent loss of range of motion to his wrist, which impacts his ability to pursue a career as an auto mechanic. *Id*. at ¶¶3.18. 3.26. Plaintiff Elizabeth Roosma, Plaintiff J. Roosma's wife, has suffered a loss of consortium, and she has had to spend "all of her time" taking care of Plaintiff J. Roosma, who now relies on disability benefits for economic support. *Id*. at ¶3.25.

While in custody at Pierce County Jail, Plaintiff J. Roosma received medical treatment from yet unnamed employees of Defendant Corrective Care Solutions, a corporation contracted to run healthcare for Pierce County. Defendant Corrective Care Solutions, which also contracts at other custodial facilities, has been the subject of a substantial number of lawsuits based on its mistreatment of persons in custody. *Id*. ¶¶2.7, 2.8. Also named in the Complaint is Defendant

1 | Paul Pastor, the County Sheriff, and Defendant Patti Jackson-Kidder, Chief of Corrections at the
2 | jail.

3 |     B.     Claims.

4 | Plaintiffs allege two claims under 28 U.S.C. §1983. Count One, alleged against all
5 | defendants, alleges violations of: the right to Due Process of law when deprived of fundamental
6 | rights, the right to equal protection, the right to freedom from cruel and unusual punishment, the
7 | right to freedom from excessive force, the right to freedom from discrimination, and the right to
8 | reasonable accommodations under the Americans with Disabilities Act (ADA) and the
9 | Rehabilitation Act. Count One does not include any further factual detail about how each
10 | defendant individually violated Plaintiffs' constitutional rights. *See* Dkt. 1 at ¶¶5.7-5.12.

11 | Count Two alleges that Defendant Pastor, the County Sheriff, and Defendant Jackson-
12 | Kidder, Chief of Corrections, "acted with deliberate intent and a deliberate policy to deprive
13 | prisoners of required medicine and medical treatment, and accommodations [*sic*] for the purpose
14 | of cutting costs and in [Defendant Correct Care Solution's] case, of maximizing profits. Dkt. 1 at
15 | ¶5.8. The next paragraph of Count Two alleges that they "acted deliberately to ratify the above-
16 | described policy and actions . . . and failed to properly train, supervise, and discipline . . . [and]
17 | acted with a design and intention to deprive Plaintiff [*sic*] and others of rights secured[.]" *Id*.
18 | ¶5.9. Count Two does not allege any further factual detail about how each defendant individually
19 | violated Plaintiffs' constitutional rights. *Id*. at ¶¶5.10-5.12.

20 | The Complaint alleges three claims for discrimination, for violations of the Americans
21 | with Disabilities Act (Count Three), § 504 of the Rehabilitation Act of 1973 (Count Four), and
22 | the Washington Law Against Discrimination (WLAD) (RCW 49.60.30). Dkt. 1 at ¶¶5.13-5.29. It
23 | appears that all three discrimination claims are alleged only against Defendant Pierce County and

24 | 
ORDER ON DEFENDANTS PIERCE COUNTY,
PAUL PASTOR, AND PATTI JACKSON-
KIDDER'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT PURSUANT TO FRCP 12(B)(6)- 3

Defendant Corrective Care Solutions. *See id.* Common to all three claims is the allegation that the defendants discriminated against Plaintiff J. Roosma for failing to accommodate Plaintiff J. Roosma's disability. *See id.* Finally, against all defendants the Complaint alleges negligence (Count Six) and intentional infliction of emotional distress (Count Seven). *Id.* at ¶¶5.30-5.37.

C. Motion to Dismiss.

The County Defendants request dismissal of "the claims that fail to plead a cause of action pursuant to Fed. R. Civ. P. 12(b)(6)," Dkt. 15 at 2, but the County Defendants advance arguments only as to Count One through Count Five. *See* Dkts. 15, 27. Defendant Corrective Care Solutions, a corporation under contract to provide health care services to inmates at Pierce County Jail, joins the County Defendants as to the discrimination claims (Counts Three, Four and Five). Dkt. 17.

## II.     STANDARD FOR MOTION TO DISMISS

Fed. R. Civ. P. 12(b) motions to dismiss may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295 (9th Cir. 1983). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007)(*internal citations omitted*). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true

ORDER ON DEFENDANTS PIERCE COUNTY,
PAUL PASTOR, AND PATTI JACKSON-
KIDDER'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT PURSUANT TO FRCP 12(B)(6)- 4

(even if doubtful in fact)." *Id*. at 1965. Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 1974.

### III. DISCUSSION

A. § 1983 claims (Count One and Count Two)

The County Defendants argue that (1) as to Defendant Pierce County, the Complaint fails to sufficiently plead a policy, practice, or custom; and (2) as to Defendant Jackson-Kidder and Defendant Pastor, the Complaint fails to plead allegations specific to each defendant, whose conduct is protected by qualified immunity. Dkt. 15 at 1-11.

To state a civil rights claim under § 1983, a plaintiff must set forth the specific factual bases upon which he claims each defendant is liable. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). A plaintiff must also allege facts showing how each individually named defendant caused or personally participated in causing the harm alleged in the complaint. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir.1981). Vague and conclusory allegations of official participation in civil rights violations are not sufficient to support a claim under § 1983. *Ivey v. Board of Regents*, 673 F.2d 266 (9th Cir. 1982). Further, individually-named defendants cannot be held liable under § 1983 solely on the basis of supervisory responsibility or position. *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 694 n. 58. A theory of *respondeat superior* is insufficient to state a claim. *Padway v. Palches,* 665 F.2d 965 (9th Cir.1982).

   *1. Pierce County (Count One)*

To state a § 1983 claim against a municipality, a plaintiff must show that the defendant's employees or agents acted through an official custom, pattern or policy that permits deliberate indifference to, or violates, the plaintiff's civil rights; or that the entity ratified the unlawful conduct. The municipal action must be the moving force behind the injury of which plaintiff

ORDER ON DEFENDANTS PIERCE COUNTY,
PAUL PASTOR, AND PATTI JACKSON-
KIDDER'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT PURSUANT TO FRCP 12(B)(6)- 5

complains. *Monell v. Department of Social Servs.*, 436 U.S. 658, 690-91 (1978); *Larez v. City of Los Angeles*, 946 F.2d 630, 646-47 (9th Cir. 1991). A "policy" is "a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Fairley v. Luman*, 281 F.3d 913, 918 (9th Cir. 2002) (internal quotations and citations omitted). Both action and inaction can constitute a "policy" for municipal liability purposes. *C.f. Monell,* 436 U.S. at 661 (forcing women to take early maternity leave); *City of Canton,* 489 U.S. at 387 (failure to train); *Oviatt,* 954 F.2d at 1477 (failure to implement adequate procedural safeguards). A theory of respondeat superior, where municipal liability is incurred based on the actions of employees, is not a sufficient basis for § 1983 liability. *Hydrick v. Hunter*, 500 F.3d 978, 988 (9th Cir. 2007).

In their Response, Plaintiffs argue that the Complaint alleges the following policies of Defendant Pierce County for § 1983 purposes: (1) contracting essential jail functions, including medical care, to Defendant Corrective Care Solutions, an inexpensive contractor with a history of terrible medical care; (2) "cutting corners" to save money, for example, by failing to provide prescribed medications and treatment; and (3) routinely "ignoring/denying requests for accommodations and medical treatment by prisoners," for example, by failing to move Plaintiff to the lower bunk, which would have prevented his injury. Dkt. 26 at 1, 2, 10, 11.

Plaintiffs' Response extends the Complaint beyond its four corners. The decision to cut costs by contracting with a corporation known to have an abysmal track record may constitute a "policy" for municipal liability purposes, but as to Defendant Pierce County, the Complaint does not allege that this policy is a moving force behind the harm to Plaintiffs. *See* Dkt. 1 at ¶¶2.7. 2.8. Count One, which is the only § 1983 claim alleged against Defendant Pierce County, makes no mention of any cost-cutting measures, such as the decision to contract with Defendant

ORDER ON DEFENDANTS PIERCE COUNTY,
PAUL PASTOR, AND PATTI JACKSON-
KIDDER'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT PURSUANT TO FRCP 12(B)(6)- 6

Corrective Care Solutions. *See id*. at ¶¶5.1-5.6. Nor does Count One make any mention of the other two policies Plaintiffs' Response now advances. *See id*. Instead, Count One enumerates a general list of rights allegedly violated by all the defendants, without specifying how each defendant violated each right. *See id*. Count Two alleges "a deliberate policy to deprive prisoners of required medicine and medical treatment . . . for the purposes of cutting costs," *id*. at ¶5.8, which lends support to the policies Plaintiffs' Response now points to, but Count Two is alleged against only Defendant Pastor and Defendant Jackson-Kidder. *See* ¶¶5.7-5.12. While Plaintiffs' Response may give Defendant Pierce County notice of Plaintiffs' intent, the Complaint controls. As alleged, Count One does not state a § 1983 claim upon which relief can be granted against Defendant Pierce County, and it should be dismissed without prejudice as to Defendant Pierce County.

      *2.  Defendant Pastor, Sheriff (Count One and Count Two)*

The County Defendants argue that the Complaint fails to specifically state any direct action or participation on the part of Defendant Pastor or Defendant Jackson-Kidder. Dkt. 15 at 4-5. The County Defendants further contend that the Complaint does not allege any "policy," but rather at best advances a respondeat superior theory of liability. *Id*. In the alternative, Defendants argue that the conduct of Defendant Pastor and Defendant Jackson-Kidder is protected by qualified immunity, because qualified immunity protects discretionary decisions and reasonably-reasoned decisions that fall within a person's official duties. *Id*. at 6, 7.

Plaintiffs respond by arguing that Defendant Pastor is the chief policymaker in his capacity as County Sheriff, and he signed a contract with Defendant Corrective Care Solutions, a corporation with "a long history of being sued and criticized for medical negligent [*sic*] in the jail," which resulted in the harm to Plaintiffs. Dkt. 26 at 12. As to Defendant Jackson-Kidder,

ORDER ON DEFENDANTS PIERCE COUNTY,
PAUL PASTOR, AND PATTI JACKSON-
KIDDER'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT PURSUANT TO FRCP 12(B)(6)- 7

Plaintiffs argue that Defendant Jackson-Kidder harmed Plaintiffs by implementing harmful health care policies and executing the contract with Defendant Corrective Care Solutions. *Id*. The result of both defendants' conduct, according to Plaintiffs, was statutory violations and constitutional deprivations under the Fourth, Eighth, and Fourteenth Amendments. *Id*., citing to ¶¶5.8, 5.9.

As a threshold matter, Count One, already dismissed against Defendant Pierce County, should be dismissed for failure to state a claim as to all defendants, because the claim does nothing but recite legal conclusions. *See* Dkt. 1 at 5.1-5.6. In contrast, Count Two, alleged only against Defendant Pastor and Defendant Jackson-Kidder, alleges policies with more specificity. For reasons discussed below, in Count Two, the Court finds that Plaintiffs have stated a claim as to Defendant Pastor, but not as to Defendant Jackson-Kidder.

For purposes of analyzing Count Two, the Court focuses its attention on the Eighth Amendment violation alleged, because Plaintiff J. Roosma's medical treatment is at the heart of the parties' arguments, and Plaintiffs do not coherently advance arguments for the other alleged constitutional violations. The Eighth Amendment prohibits deliberate indifference to medical needs of inmates. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Jones v. Johnson*, 791 F.2d 769, 771 (9th Cir. 1986). According to the Ninth Circuit, prison officials "'are indifferent to prisoners' serious medical needs when they deny, delay, or intentionally interfere with medical treatment.'" *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (*quoting Hamilton v. Endell*, 981 F.2d 1062, 1066 (9th Cir. 1992)). To establish deliberate indifference, a prisoner must show that a defendant purposefully ignored or failed to respond to the prisoner's pain or possible medical need. *See McGuckin*, *supra,* 974 F.2d 1050, 1060 (9th Cir. 1992); *Estelle*, *supra,* 429 U.S. at 104. A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. *Id*.

ORDER ON DEFENDANTS PIERCE COUNTY,
PAUL PASTOR, AND PATTI JACKSON-
KIDDER'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT PURSUANT TO FRCP 12(B)(6)- 8

Constitutional violations, including Eighth Amendment violations, are shielded by qualified immunity, as long as the conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In analyzing a qualified immunity defense, the Court must determine: (1) whether a constitutional right would have been violated on the facts alleged, taken in the light most favorable to the party asserting the injury; and (2) whether that right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Qualified immunity also protects a defendant from having to bear the burdens of such pretrial matters as discovery. *Behrens v. Pelletier*, 516 U.S. 299, 308 (1996).  *See also Act Up!/Portland v. Bagley*, 988 F.2d 868, 872-73 (9th Cir. 1993). In analyzing a qualified immunity defense, courts are "permitted to exercise sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first[.]"  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Applying the *Saucier* qualified immunity test to Defendant Pastor, the Court finds, first, that a constitutional deprivation could flow from the decision of a County Sheriff, acting in his representative capacity, to contract jail health care services to a corporation known to maximize profits at the expense of significant, frequent harm to inmates. This would also violate clearly established law, where under Washington law the County Sheriff is ultimately responsible for the health, safety, and welfare of the inmates. *See* RCW 70.48.071, 090(4) and .180. Although such a claim may be ripe for defeat at summary judgment, *compare to Jeffers v. Gomez*, 267 F.3d 895, 914-15 (9th Cir. 2001), the claim should not be dismissed based on the pleadings as to Defendant Pastor.

As to Defendant Jackson-Kiddings, however, Count Two should be dismissed. Although the Complaint alleges that both Defendant Pastor and Defendant Jackson-Kidder "participated in

ORDER ON DEFENDANTS PIERCE COUNTY, PAUL PASTOR, AND PATTI JACKSON-KIDDER'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FRCP 12(B)(6)- 9

the creation and implementation of this policy [to cut costs and deprive prisoners of medicine], Dkt. 1 at ¶5.9, *see id.* at ¶5.8, their alleged roles with relation to this "policy" are distinct. Defendant Pastor allegedly entered into the harmful contract on behalf of the county as its representative and final policymaker, whereas, by Plaintiffs' own admissions, "Defendant Jackson-Kidder carried out the policies detailed, and implemented the relation and oversaw the conduct of [Defendant Corrective Care Solutions]." Dkt. 26 at 12. This is nothing more than a theory of vicarious liability, and it is an insufficient basis to advance a § 1983 claim.

In summary, the County Defendants' motion should be granted as to Count I, which should be dismissed without prejudice as to all parties for failure to state a claim. As to Count II, the County Defendants' motion should be denied as to Defendant Pastor, but it should be granted in part and the claim dismissed without prejudice as to Defendant Jackson-Kiddings.

D. <u>Discrimination Claims (Count Three, Count Four, and Count Five) against the County Defendants and Defendant Corrective Care Solutions</u>

The County Defendants, joined by Defendant Corrective Care Solutions, make two primary arguments: (1) the Complaint fails to sufficiently allege what Plaintiff J. Roosma's "disability" is, and (2) the Complaint fails to allege how each defendant discriminated against Plaintiff J. Roosma based on the alleged disability. Dkt. 15 at 2, 11-16.

Concerning the first argument, Plaintiffs argue that the Complaint sufficiently alleges a disability, namely, Plaintiff J. Roosma's Restless Leg Syndrome. Dkt. 26 at 23. Concerning the second argument, Plaintiffs argue that "the pattern and practice of repeated refusal and failure to accommodate this disability, despite frequent requests, demonstrates discrimination in act as well as intent." Dkt. 26 at 23.

Title II of the ADA prohibits discrimination against a "qualified individual with a disability," which is defined as:

> An individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131(2). A "disability" is defined as "[a] physical or mental impairment that substantially limits one or more of the major life activities[.]" 28 C.F.R. § 35.108. "Major life activities include, but are not limited to: "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing . . ." *Id*.

Applied here, Plaintiffs have stated a claim under the ADA. First, the alleged "disability" is Plaintiff J. Roosma's Restless Leg Syndrome, which the Complaint alleges to be a medically-diagnosed condition that can be controlled with prescribed medicine. The condition allegedly causes Plaintiff to convulsively move during his sleep, which is a substantial limit on a major life activity. Second, the "discrimination" by the defendants is their alleged failure to modify their bunk rules, policies, or practices after Plaintiff J. Roosma disclosed his medical condition and requested to sleep in a vacant, lower bunk, which would have prevented significant harm when he later fell from the top bunk. Defendant Pierce County is allegedly responsible for overseeing the health, safety, and welfare of inmates and contracts jail health care services to Defendant Corrective Care Solutions, so under that theory, either defendant could be liable for the failure to modify rules, policies, or practices. The ADA claim should not be dismissed.

Consideration of Plaintiffs' Rehabilitation Act claim, Count Four, quickly flows from analysis of the ADA claim. The statutory schemes share similar definitions and purposes. 29 U.S.C. §§ 701(b), (c), and 705; 42 U.S.C. § 12131; 28 C.F.R. §§ 35.108, 42.540(k)(2)(ii). According to the legislative history of the ADA , Title II of the ADA "essentially simply extends

ORDER ON DEFENDANTS PIERCE COUNTY, PAUL PASTOR, AND PATTI JACKSON-KIDDER'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FRCP 12(B)(6)- 11

the anti-discrimination prohibition embodied in section 504 [of the Rehabilitation Act] to *all actions of state and local governments.*" *Barden v. City of Sacramento*, 292 F.3d 1073, 1076–77 (9th Cir. 2002). "The ADA's broad language [which] bring[s] within its scope anything a public entity does." *id.* Applying the ADA definitions to the Rehabilitation Act claim results in no difference in outcome; the Rehabilitation Act claim should not be dismissed.

The WLAD prohibits discrimination on the basis of disability in public facilities. RCW 60.60.030(3) and .040. The definition of "disability" under Washington law is broader than the ADA definition. *Hale v. Wellpinit Sch. Dist. No. 49*, 165 Wn. 2d 494, 502 (2009). Because the Complaint sufficiently states a claim for disability discrimination based for ADA purposes, the Complaint sufficiently states a claim under the WLAD.

\* \* \*

Therefore, it is hereby **ORDERED** that:

The County Defendants' Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6) is GRANTED IN PART as to Count One, which is dismissed without prejudice as to all defendants, and as to Count Two, which is dismissed without prejudice as to Defendant Patti Jackson-Kidder.

The motion is DENIED IN PART as to Count Two for Defendant Paul Pastor, as well as Count Three, Count Four, and Count Five.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 22nd day of November, 2016.

ROBERT J. BRYAN
United States District Judge

ORDER ON DEFENDANTS PIERCE COUNTY, PAUL PASTOR, AND PATTI JACKSON-KIDDER'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FRCP 12(B)(6)- 12