UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JUSTIN ROOSMA and ELIZABETH ROOSMA,<br><br>Plaintiff,<br>v.<br>PIERCE COUNTY, CORRECT CARE SOLUTIONS LLC, PAUL PASTOR, PATTI JACKSON-KIDDER, and DOES 1-500<br><br>Defendants. | CASE NO. 3:16-cv-05499-RJB<br><br>ORDER ON (1) DEFENDANT CORRECT CARE SOLUTION'S MOTION FOR SUMMARY JUDGMENT, (2) PLAINTIFFS' MOTION FOR LEAVE TO FILE EXCESS PAGES AND MOTION FOR LEAVE TO FILE 11 MINUTES LATE, AND (3) THE PARTIES' CROSS-REQUESTS TO STRIKE |

THIS MATTER comes before Court on Defendant Correct Care Solution's Motion for Summary Judgment. Dkt. 119. Defendants Pierce County, Paul Pastor, and Patti Jackson-Kidder ("the County Defendants") filed a Response in support of Defendant CCS' motion and also separately filed a Motion for Summary Judgment[1]. *See* Dkts. 96, 102. When filing their Response to Defendant CCS' motion, Plaintiffs also filed a Motion for Leave to File Excess Pages and Motion for Leave to File 11 minutes Late. Dkt. 109. Defendant CCS' Reply seeks to strike selections of Plaintiffs' Response, and Plaintiffs' Surreply moves to strike selections of

---

[1] The County Defendants' Response will be considered with the merits of their separately-filed Motion for Summary Judgment. *See* Dkt. 102.

- 1

Defendant CCS' Reply. Dkts. 109, 119. The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file herein.

## I.     BACKGROUND

**A. PRELIMINARY PENDING MOTION AND REQUESTS TO STRIKE**

This case centers on an injury to Plaintiff Justin Roosma while in custody at Pierce County Jail.

Defendant CCS filed a Motion for Summary Judgment on November 29, 2017, which was renoted to January 26, 2018. Dkts. 77, 88. Defendant CCS withdrew the motion on December 13, 2017, and filed the present Motion for Summary Judgment on January 4, 2018. Dkts. 89, 90. Defendant CCS' summary judgment motions are substantially similar. *Compare* Dkt. 77 to Dkt. 90.

The present pending motion, Defendant CCS' Motion for Summary Judgment, seeks summary judgment of dismissal under Fed. R. Civ. P. 56. The motion was originally noted for January 26, 2018, and on January 22, 2018, Plaintiffs filed a Motion for Extension of Time to File Response. Dkt. 97. The Court orally granted Plaintiffs' motion in part at a January 24, 2018 status conference, setting deadlines of January 29, 2018 and February 1, 2018 for the Response and Reply. Dkt. 101.

Plaintiffs filed a Response on January 30, 2018 at 12:11am. Dkt. 106. At 1:35am, Plaintiffs filed a Motion for Leave to File Excess Pages and Motion for Leave to File 11 Minutes Late, requesting leave to file a brief "up to 10 excess pages" longer than allowed by LCR 7 and late by eleven minutes. Dkt. 109. Plaintiffs filed the "Correct Version" of the Response at 3:04am. Dkt. 113.

On February 1, 2018, Defendant CCS timely filed its Reply. Dkt. 116. Plaintiffs filed a Surreply on February 1, 2018. Dkt. 119.

Defendant CCS seeks to strike portions of Plaintiffs' Response. Defendant CCS raises its request in the Declaration of Marc Rosenberg Providing Objections to Plaintiffs' Response to Summary Judgment and Supporting Papers, an attachment to the Reply. The declaration lodges both procedural and evidentiary objections to Plaintiffs' Response. Dkt. 117. On procedural grounds, Defendant CCS moves to strike Plaintiffs' Response because of its length and untimeliness, where Plaintiffs had been given an extra month to properly file their Response. Dkt. 117 at 2. On evidentiary grounds, Defendant CCS moves to strike portions of Plaintiffs' Response as unsubstantiated by the record. *Id.* at 2-10. Defendant CCS also challenges the declaration of Karen Weill, Plaintiffs' counsel's wife and Legal Assistant, as well as the declarations of Plaintiff Elizabeth Roosma, and Plaintiff Justin Roosma, on multiple evidentiary grounds, *inter alia*, inadequate foundation and hearsay. *Id.* at 2-10.

Plaintiffs' Surreply moves to strike the Declaration of Marc Rosenberg. Dkt. 119. Defendant CCS violated LCR 7(g), Plaintiffs opine, because the declaration was filed as a separate motion to strike, rather than part of the Reply. Dkt. 119. *See* LCR 7(g) ("Requests to strike . . . shall not be presented in a separate motion to strike, but shall instead be included in the responsive brief[.]"). The Surreply is more than three pages in length. *Compare to* LCR 7(g)(3).

At this juncture, both sides have, in one way or another, technically departed from strict observance of Local Court Rule 7. In an effort to reach the merits, neither request to strike should be granted on procedural grounds. To that extent, the requests to strike should be denied, and Plaintiffs' Motion for Leave to File Excess Pages and Motion for Leave to File 11 Minutes Late should be granted.

ORDER ON (1) DEFENDANT CORRECT CARE SOLUTION'S MOTION FOR SUMMARY JUDGMENT, (2) PLAINTIFFS' MOTION FOR LEAVE TO FILE EXCESS PAGES AND MOTION FOR LEAVE TO FILE 11 MINUTES LATE, AND (3) THE PARTIES' CROSS-REQUESTS TO STRIKE - 3

The Court declines to reach the merits of each one of Defendant CCS' evidentiary objections, which are numerous. Facts relied upon here are only those substantiated by the record, and the Court has not considered those "facts" based only on counsel's representation. Defendant CCS' request to strike portions of the record for evidentiary reasons should be denied.

**B. FACTS**

Having clarified which facts should be stricken, the Court herein recites the facts supported by the record and relevant to resolving Defendant CCS' motion.

Mr. Roosma was medically screened at Pierce County Jail on April 28, 2014. Dkt. 81-1 at 4. A Screening Questionnaire signed by Mr. Roosma and a nurse states that Mr. Roosma "does not know names of medications." *Id*. at 4-6. Correct Care Solutions faxed a medical release and medication verification form to Rite Aid Pharmacy, which returned the request as "Not verifiable." *Id*. at 9. After visiting a mental health provider, Mr. Roosma was given two anti-depressants, Norvasc and Effexor. *Id*. at 14. Mr. Roosma was released on bail on May 3, 2014. *Id*. at 21. Mr. Roosma maintains that he was released after having two seizures, caused by an abrupt stop of medications. Dkt. 110 at 3.

Mr. Roosma was again booked into Pierce County Jail on June 17, 2014. Dkt. 81-1 at 25. A second Screening Questionnaire notes that Mr. Roosma currently takes medication but does not specify the type. *Id*. at 28. A second medication verification form completed by Rite Aid Pharmacy states that Mr. Roosma received a 60-day prescription on June 10, 2014 for Mirapex, a drug prescribed for restless leg syndrome. *Id*. at 33. The medication verification form also confirmed other then-current prescriptions, including Prilosec (gastrointestinal) and Effexor (antidepressant). *Id*.

A June 21, 2014 healthcare request, or "kite," requests "meds" because "I'm really sick due to not having them." Dkt. 81-1 at 37. Following a second kite, on June 23, 2014, Mr. Roosma received treatment for gastrointestinal issues. *Id.* at 39, 40.

On June 26, 2014, Mr. Roosma sent a third kite, stating, "I have a severe case of RSP [*sic*] (Restless Leg Syndrome) . . . I take Maripax [*sic*] everyday I can't sleep or rest due to pain from it[.]" Dkt. 81-1 at 45. A signed response by a nurse notes, "Seen 6/27/14." *Id.* The same nurse's handwritten notes reflect a June 27, 2014 discussion of Mirapex and a fax to St. Clare Hospital for release of Mr. Roosma's "RLS + shoulder pain" records. *Id.* at 49, 51.

On July 7, 2014, Mr. Roosma sent a fourth kite. "I was seen about a week ago for my meds . . . I take Maripax [*sic*] for Restless Leg and I haven't had my meds [and] they are current[.]" Dkt. 81-1 at 54. Mr. Roosma met with a nurse on July 9, 2014 and began taking some medications. *Id.* The Medication Administration Record, a medical log of medicine given to Mr. Roosma, reflects administration starting on either July 9 or 10, 2014 of Lopid (cholesterol), Effexor (antidepressant), Niaspan (cholesterol), and Prilosec (gastrointestinal medication). Dkt. 117-1 at 20; Dkt. 81-1 at 58.

On July 11, 2014, Mr. Roosma sent a fifth kite, stating, "I've sent a couple kites out to find out about my Restless Leg medication "MeriPex" [*sic*] could you Please let me know what the hold up is. I would like to sleep." Dkt. 81-1 at 60. The comments portion of the kite states, "Seen 7-14-14. Medication not being filled at this time per Carver ARNP." *Id.*

On July 12, 2014, Mr. Roosma sent a sixth kite, stating, "I'm kicking in my sleep! When I sleep, I'm hurting my toes and there [*sic*] bleeding all over my sheets. . . I really need my RLS MeriPex [*sic*] to sleep." Dkt. 81-1 at 62. The comments portion, signed by a nurse, states "appointment already scheduled." Another kite, sent on either July 10, 2014 or July 18, 2014,

states, "I think I broke my foot from kicking in my sleep do [*sic*] to my RLS Restless Leg. I want my Meripex [*sic*] I'm really hurting[.]" Dkt. 81-1 at 64. The comment section, which is unsigned, reads, "Seen." *Id*.

On July 21, 2014, at approximately 3am, Mr. Roosma fell from the top bed bunk onto the floor. Mr. Roosma was alone in the room. Mr. Roosma states that he "did not go to sleep until very late" because "they did not allow me to take the Mirapex[.]" Dkt. 110 at 10. Mr. Roosma represents that at some point prior to the fall, he had asked an unidentified person if could sleep on a lower bunk, but "they would not grant me one." *Id*. at 8.

Mr. Roosma states that he is "sure it was my restless leg syndrome (RLS) that caused me to fall out of bed . . . because after going into custody and being cut off of the Mirapex I started feeling the familiar symptoms, severe pain in my legs." Further, he recalls, "a few days before the fall I had actually suffered injury to my foot and toes kicking the wall in my sleep, [which] leaves no doubt in my mind it was my RLS that caused the fall." Dkt. 110 at 6.

When asked at his deposition about self-diagnosing his own medical issues, Mr. Roosma agreed with opposing counsel that he "do[es] not have any medical training that would permit [him] to personally diagnose or treat any serious medical or mental health issues," Dkt. 78 at 4, although, he maintains, he is "at the worst end of the range of symptoms" for a person with restless leg syndrome. Dkt. 110 at 11. A doctor first diagnosed Mr. Roosma with the condition in 2008, when he was first prescribed Mirapex, which made a difference "like night and day." *Id*. at 8; Dkt. 108-9 at 9. Mrs. Roosma also noticed a difference after Mr. Roosma began taking Mirapex, observing that Mirapex "was a godsend . . . There was no more thrashing [and] [s]udden leg movement ceased." Dkt. 112 at 3. Since first being prescribed Mirapex, Mr.

Roosma reports that his doctor has increased dosage from 1mg to 3mg per day. Dkt. 110 at 10. *But compare to* Dkt. 108-9 at 2, 8, 9 (.50 mg and .25mg).

After the fall incident, Mr. Roosma was transported first to Tacoma General Hospital, then to Harborview Medical Center. Dkt. 110 at 8. Mr. Roosma states that he broke his eye socket, suffered a concussion, broke his wrist, and had to have twenty-two stiches on his knee. Dkt. 110 at 9. A radiology report dated July 21, 2014, concludes that an x-ray "showed no fractures besides the left orbital roof." Dkt. 81-1 at 80, 82. According to the Medication Administration Record, Mr. Roosma was administered Mirapex from July 22, 2014 until July 24, 2014. Dkt. 117-1 at 20. It appears that a single person authorized administration of all medicine for Mr. Roosma. Dkt. *Id*. According to RN Jonathan Slothower, the nurse on duty when Mr. Roosma fell from his bed, inmates are given medication when "medically necessary," a determination made by a doctor or nurse practitioner. *Id*. at 9, 20.

Defendant CCS' expert witness, Dr. Scott Bonvallet, medical director of Overlake Sleep Disorders Center, is familiar with distinctions between restless leg syndrome and obstructive sleep apnea. Based on his review of Mr. Roosma's medical records, Dr. Bonvallet has concluded that Mr. Roosma's RLS "was not the cause of, or even a contributor to, his falling out of bed." Dkt. 80 at 3. According to Dr. Bonvallet, RLS "does not cause individuals to fall out of bed, as the movements are quite subtle[,]" and the "limb twitching/awakenings from RLS occur during the first few hours of sleep . . . [but] Mr. Roosma fell out of bed at approximately 0300, making it very unlikely that his fall was caused by RLS." *Id*. He opines that "there are much more probable explanations to include [Mr. Roosma's] severe obstructive sleep apnea, known history of sleep walking, or he simply fell out of bed." *Id*.

ORDER ON (1) DEFENDANT CORRECT CARE SOLUTION'S MOTION FOR SUMMARY JUDGMENT, (2) PLAINTIFFS' MOTION FOR LEAVE TO FILE EXCESS PAGES AND MOTION FOR LEAVE TO FILE 11 MINUTES LATE, AND (3) THE PARTIES' CROSS-REQUESTS TO STRIKE - 7

In Mrs. Roosma's experience, "sleep apnea never arose as a practical problem causing restlessness[.]" Dkt. 112 at 3. Mr. Roosma acknowledges his diagnosed sleep apnea, but Mr. Roosma had not been using the "CPAP," a respiratory ventilation to aid with sleep apnea, "because I was sleeping so well from the Mirapex." Dkt. 110 at 10. Mrs. Roosma confirms that Mr. Roosma tried a CPAP without success, but Mirapex "profoundly" helped his RLS symptoms, "from mild irritation to severe kicking." Dkt. 112 at 4.

Dr. Bonvallet has also concluded that it was reasonable and within the standard of care for the jail medical providers to not prescribe Miramex. Dkt. 80 at 5. According to Dr. Bonvallet, "I understand that there are substantial reasons to restrict access to such medication in the setting of jail[,]" and "there were no foreseeable medical risks through its discontinuance[.]" *Id*.

Mr. and Mrs. Roosma married on February 14, 2016. Prior to marriage, they lived together continuously from February 1999, except during several intervals when Mr. Roosma was in custody. Dkt. 79 at 5; Dkt. 112 at 2. Mr. and Mrs. Roosma decided to bring this lawsuit between July 2014 and the end of 2014, Dkt. 79 at 5, and they filed this lawsuit on June 17, 2016. Dkt. 1.

**C. CLAIMS**

The Complaint alleges two claims under 28 U.S.C. §1983. Count One has been dismissed without prejudice as to all defendants, Dkt. 29 at 12, and Count Two is alleged only against Defendants Paul Pastor and Jackson-Kidder, not Defendant CCS. Dkt. 1 at ¶5.8.

Against Defendant CCS the Complaint alleges three claims for discrimination, for violations of the Americans with Disabilities Act, Count Three; §504 of the Rehabilitation Act, Count Four; and the Washington Law Against Discrimination (WLAD), RCW 49.60.30, Count Five. Dkt. 1 at ¶¶5.13-5.29. Common to all three discrimination claims is the allegation that the

defendants, including Defendant CCS, discriminated against Plaintiff Justin Roosma by failing to accommodate a disability. *See id*. Against Defendant CCS the Complaint also alleges common claims of negligence and intentional infliction of emotional distress, in Count Six and Count Seven, respectively. *Id*. at ¶¶5.30-5.37.

**D. Defendant CCS' Motion for Summary Judgment.**

Defendant CCS seeks summary judgment of dismissal of all claims. Dkt. 90. Defendant CCS also raises two additional reasons for dismissal, arguing that (1) "John Doe" healthcare provider defendants should be dismissed, because Plaintiffs have been given an opportunity through discovery to identify unknown defendants and have failed to do so; and (2) claims brought by Plaintiff Elizabeth Roosma should be dismissed, because loss of consortium claims are not available for plaintiffs who "marry into" a lawsuit. Dkt. 90 at 8-10. Defendant CCS also requests that the §1983 claims, previously dismissed without prejudice, be dismissed with prejudice. *Id*. at 90.

## II. DISCUSSION

**A. Summary judgment standard.**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

(1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56 (d). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, T.W. *Elect. Service Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, nonspecific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

**B. John Doe healthcare provider defendants.**

Defendant CCS seeks summary judgment of dismissal of "John Doe" healthcare providers named as placeholders in the Complaint. Dkt. 90 at 9; Dkt. 116 at 5. Defendant CCS argues that, although plaintiffs generally should be given the chance to identify unknown defendants through the discovery process, dismissal of John Doe defendants is warranted, because the plaintiffs have been given that chance, yet failed to name, specific providers. *Id.*

Plaintiffs respond by calling the discovery exchange unfair. Dkt. 113 at 19-21. Plaintiffs maintain that they should yet be given the chance to amend the Complaint to add new defendants. According to Plaintiffs, "[i]t is the height of cynicism for [Defendant] CCS to completely obstruct discovery and then move to dismiss because Plaintiffs lack the information that CCS has concealed[.]" Plaintiffs urge the Court to reject "reward[ing] [Defendant CCS] with an ill-gotten dismissal[.]" *Id*. at 21.

Plaintiffs' Response, which places the blame on Defendant CCS for its discovery "obstruction," ignores Plaintiffs' counsel's culpability in failing to diligently pursue discovery, an issue that has plagued this case repeatedly. Plaintiffs' argument launches only general accusations and fails to identify any yet-unnamed defendant purportedly concealed in discovery by Defendant CCS. Plaintiffs' argument also overlooks the fact that Plaintiffs' counsel attempted—but failed—to amend the Complaint, but leave to amend was denied on <u>procedural</u> grounds. Dkt. 34. Plaintiffs did not again attempt to amend the Complaint, despite the availability of provider names readily apparent from medical records in Plaintiffs' possession. The Court finds that Plaintiffs have been given an adequate opportunity for discovery. Therefore, consistent with *Gillespie v. Civiletti*, 629 F.2d 637 (9th Cir. 1980), and given the late state of the proceedings, amending the Complaint to substitute named defendants for John Doe defendants should not be permitted.

The John Doe defendants should be dismissed. To that extent, Defendant CCS' motion should be granted.

**C. Sec. 1983 claims (Count One and Count Two)**

The Complaint alleges two claims for constitutional deprivations under §1983, Count One and Count Two.

Count One is alleged "As To All Individual Defendants and DOES 1-100." Dkt. 1 at 11. The Court previously dismissed Count One without prejudice "as to all defendants" for failure to state a claim. Dkt. 29 at 12.

Count Two is alleged "As To DEFENDANTS PASTOR, JACKSON-KIDDER, and DOES 101-500[.]" Dkt. 1 at 13. Defendant CCS is not named as a defendant in Count Two.

Plaintiffs now contend that they named Defendant CCS in Count Two, because Count Two names "John Doe" defendants, and Count Two alleges constitutional deprivations by "the responsible officials and upper management at CCS[.]" Dkt. 1 at ¶5.8. This interpretation is not supported by any fair reading of the Complaint. Further, Plaintiffs cannot now amend the Complaint to substitute Defendant CCS for the John Doe defendants, who have been dismissed. *See above*. Even if Plaintiffs could do so now, Plaintiffs' theory that Defendant CCS is bootstrapped as a defendant by allegations against 'officials and upper management' would fail, because the §1983 liability of an entity does not arise from the conduct of that entity's agents; §1983 liability only arises from the conduct of individuals who violate a plaintiff's constitutional rights. Those individuals are not liable on an agency theory.

There is no viable §1983 claim against Defendant CCS. To the extent that Defendant CCS seeks summary judgment of dismissal of the §1983 claims, the motion should be denied as moot, because Count One was previously dismissed as to all defendants, including Defendant CCS, and Count Two was not pled against Defendant CCS.

Defendant CCS requests that the §1983 claims be dismissed with prejudice. The Court declines the invitation to dismiss the §1983 claims with prejudice. To that extent, Defendant CCS' motion should be denied.

**D. ADA and Rehabilitation Act claims (Count Three and Count Four)**

Defendant CCS argues that dismissal of the ADA and Rehabilitation Act claims is warranted, because neither statutory scheme has ever been applied to give rise to a cause of action for inadequate or denied medical treatment, especially in the context of inmate care. Dkt. 90 at 15, citing to *inter alia*, *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996); *Nails v. Laplante*, 596 F.Supp.2d 475, 481-82 (D. Conn. 2009); *Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134, 1144 (10th Cir. 2005); *Carrion v. Wilkinson*, 309 F.Supp.2d 1007, 1016 (N.D. Ohio 2004).

Plaintiffs cursorily push back, arguing that the alleged disability discrimination for the ADA and Rehabilitation claims "comes not from the failure to provide medical treatment, but the failure . . . to provide the reasonable accommodation of allowing Plaintiff to move to a lower bunk for his safety[.]" Dkt. 113 at 31.

Plaintiffs' argument is unpersuasive, because legal authority discussing ADA and Rehabilitation Act claims shows no such difference between "medical treatment," e.g., receiving Mirapex for restless leg syndrome, and "allowing Plaintiff to move to a lower bunk[.]" The failure to allow Mr. Roosma to sleep on a bottom bunk can be analogized to other unaddressed medical needs that did not give rise to claims for disability discrimination, such as a diabetic requesting a special diet, *Reyes v. Ryan*, 2009 WL 10677722, at *2 (D. Ariz. 2009), *aff'd.*, 424 F. App'x 659 (9th Cir. 2011), or an inmate requiring outdoor recreation to prevent depression, *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1022 (9th Cir. 2010). In such cases, courts have observed the bedrock rule that the statutory protections from disability discrimination extend only to "prohibit[] discrimination *because of* disability, not inadequate treatment *for* disability." *Simmons*, 609 F.3d at 1022 (emphasis added), citing to *Bryant*, 84 F.3d at 248-249 ("[T]he

[ADA] would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners[.]"). Plaintiffs have presented no basis to depart from this axiom.

Even if Plaintiffs are correct, that denying Mr. Roosma the "accommodation" of access to a lower bunk could give rise to ADA and Rehabilitation Act claims, the claims would not survive summary judgment on their merits. Plaintiffs have failed to show that Mr. Roosma was denied access to the lower bunk on account of his disability. There is no indicia of causation, which is a prima facie element to ADA and Rehabilitation Act claims. *Daubert v. Lindsay Unified Sch. Dist.*, 760 F.3d 982, 985 (9th Cir. 2014) (ADA); *Walton v. U.S. Marshals Serv.*, 410 F.3d 1052, 1058 (9th Cir. 2005) (Rehabilitation Act).

Defendant CCS' motion for summary judgment should granted as to Count Three and Count Four, which should be dismissed against Defendant CCS.

**E. Washington Law Against Disability (WLAD) claim (Count Five).**

Defendant CCS argues that the WLAD claim should be dismissed, because the WLAD has not yet been applied to jails. Dkt. 90 at 18-19, citing to *Vega v. U.S.*, 2012 WL 5384735 (W.D. Wash. 2012), vacated in part on reconsideration; *Knight v. Wash. State Dep't of Corr.*, 147 F.Supp.3d 1165, 1172 (W.D. Wash. 2015). *See* RCW 49.060.040(2).

Plaintiffs' Response provides no authority to the contrary. Dkt. 113 at 31.

This Court joins its sister Western District of Washington courts in declining to extend WLAD protections to inmates. The WLAD gives persons in Washington the right to be free from discrimination for disability in "any place of public resort, accommodation, assemblage, or amusement." RCW 49.60.030. "Any place" is defined by an inclusive, not exclusive, list, but nothing in the list resembles or is analogous to the unique context of incarceration. *See* RCW 49.60.040(2) (e.g., public elevators, public schools, restaurants, transient guest housing, etc.).

Like the ADA and Rehabilitation claims, the WLAD claim also fails on account of Plaintiffs' failure to make a prima facie showing of causation. Nothing in the record indicates that treatment of Mr. Roosma by Defendant CCS was because of a disability.

Defendant CCS' motion for summary judgment should granted as to Count Five, which should be dismissed against Defendant CCS.

**F. Negligence (Count Six)**

Defendant CCS argues that the negligence claim is governed by statute, RCW 7.70.010. This Court agrees. *See Branon v. State*, 94 Wn. App. 964, 969 (1999) (the statute "modifies procedural and substantive aspects of *all* civil actions for damages for injury occurring as a result of health care, regardless of . . . characteriz[ation]"). RCW 7.70 gives plaintiffs recourse for "injury resulted from the failure of a health care provider to follow the accepted standard of care[.]" RCW 7.70.030. By statute, a prima facie showing requires that: "(1) The health provider failed to exercise the degree of care, skill, and learning expected of a reasonably prudent health care provider . . . acting in the same or similar circumstances; and (2) Such failure was a proximate cause of the injury[.]" RCW 7.70.040.

Plaintiffs fail to mention the Negligence claim anywhere in their brief. *See* Dkt. 113. It would appear that Plaintiffs have abandoned the claim, at least as to Defendant CCS.

Had Plaintiffs not abandoned this claim, it would appear from the record that the prima facie burden could be met as to proximate cause, the second element. Although Dr. Bonvallet disagrees with Mr. Roosma, Mr. Roosma maintains that, in his experience, Mirapex controlled his restless leg syndrome symptoms better than any other form of treatment, and the deprivation of Mirapex caused an episode, which is why he fell. Mrs. Roosma's personal observations of Mr. Roosma's condition support this prima facie showing.

It cannot be said, however, that the record points to a prima facie showing for the first element, which considers the standard of medical care owed to Mr. Roosma. Based on Plaintiffs' pleadings elsewhere, it would appear that Plaintiffs could possibly only argue that two medical decisions fell below the standard of care: the decision to not administer Mirapex, and the decision to deny Mr. Roosma's request to move to the bottom bunk. Mr. Roosma's opinion notwithstanding, there is no showing by any person remotely qualified as an expert that either decision fell below the standard of care. From the testimony of RN Slothower, who appears to be the only nurse deposed, it can only be gleaned that both decisions were made by another nurse who used a "medical necessity" policy framework, but RN Slothower could not say whether either decision fell below the standard of care. Dkt. 108-3 at 1, 2, 7; Dkt. 108-4 at 1, 2. Unsurprisingly, Dr. Bonvallet's statement concludes that not administering Mirapex did not fall below the standard of care, although he offered no conclusion about denying the request to sleep on the bottom bunk. *See* Dkt. 80.

The only exception to the general rule that the plaintiff must proffer standard of care testimony from an expert witness is where the lack of care "is so apparent as to be understood by a layman." *Young v. Key Pharmaceuticals, Inc.*, 112 Wn.2d 216, 230 (1989). Plaintiffs have not argued that this is such a case, nor is it readily apparent from the record how this would be such a case. Especially where, as here, Plaintiffs appear to have abandoned their claim, it would be "unjust to subject defendants to a trial in the absence of a showing[,]" because "[t]o rule otherwise would place [the defendants] in the position of being forced to defend medical malpractice suits where the plaintiffs have no competent evidence[.]" *Id.* Furthermore, it would be unfair to impose liability on Defendant Correct Care solutions for the decision to deny Mr.

ORDER ON (1) DEFENDANT CORRECT CARE SOLUTION'S MOTION FOR SUMMARY JUDGMENT, (2) PLAINTIFFS' MOTION FOR LEAVE TO FILE EXCESS PAGES AND MOTION FOR LEAVE TO FILE 11 MINUTES LATE, AND (3) THE PARTIES' CROSS-REQUESTS TO STRIKE - 16

1 Roosma's verbal request to sleep on the bottom bunk when Plaintiffs have failed to even identify
2 the person who made that decision.
3 Because there is no prima facie showing that Mr. Roosma received medical care below
4 the standard owed, Defendant CCS' motion for summary judgment should be granted and this
5 claim dismissed as to Defendant CCS.

**G. Intentional Infliction of Emotional Distress/Outrage (Count Seven)**

Under Washington law, the tort of Outrage requires proof of three elements: (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress. *Reid v. Pierce County,* 136 Wn.2d 195, 202 (1998). Whether certain conduct is sufficiently outrageous is ordinarily for the jury, but it "is initially for the court to determine if reasonable minds could differ." *Dicomes v. State,* 113 Wn.2d 612, 630 (1989). The conduct "must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Grange Ins. Ass'n v. Roberts*, 179 Wn.App. 739, 754 (2013).

Plaintiffs have not met their burden to show that the conduct substantiated by the record rises to the level of "outrageous." Plaintiffs point to Mr. Roosma "begging for medical treatment with bloody feet from his RLS" and falling from his bunk, after medical staff "refused any treatment." Dkt. 113 at 31. But any reasonable review of the record shows that Mr. Roosma had the chance to meet with medical providers multiple times, and he was given some—but concededly not all—requested prescriptions. This does not rise to the level of extreme or outrageous conduct. Plaintiffs have also not pointed to intentional or reckless conduct by Defendant CCS, *see id.*, nor is any apparent in the record.

1 | Defendant CCS' motion for summary judgment should granted as to Count Seven, which
should be dismissed against Defendant CCS.

**H. Claims brought under a loss of consortium theory by Plaintiff Elizabeth Roosma.**

Defendant CCS seeks summary judgment of dismissal of loss of consortium claims by Plaintiff Elizabeth Roosma, because, Defendant CCS argues, such claims are not available when the injury that causes loss of consortium occurred prior to marriage. Dkt. 90 at 8. Although all claims against Defendant CCS should be dismissed, *see above*, the issue of whether all loss of consortium claims brought by Plaintiff Elizabeth Roosma should also be dismissed can be quickly addressed.

The parties agree that Mr. and Mrs. Roosma married on February 14, 2016. Dkt. 79 at 5; Dkt. 112 at 2. Plaintiffs filed this lawsuit on June 17, 2016. Dkt. 1. Plaintiffs argue that Mrs. Roosma "gradually became aware of the full extent of Mr. Roosma's disability after their marriage, as it emerged over the curse [*sic*] of time[.]" Dkt. 113 at 18. Plaintiffs also point to the strength of Mr. and Mrs. Roosma's relationship prior to marriage, arguing that there is public policy interest in "not penalizing spouses for being loyal." *Id*.

In general, loss of consortium claims accrue when spouses first experience injury due to loss of consortium. *Green v. A.P.C.*, 136 Wn.2d 87, 101 (1998). A spouse cannot bring a claim for loss of consortium when the underlying injury occurred before marriage, except where that spouse does not or could not have known of a latent injury. *Id*. at 102.

*Green* squarely applies to this case and should bar Plaintiff Elizabeth Roosma's claims for loss of consortium. There is no question that Mrs. Roosma knew of Mr. Roosma's bed falling incident in 2014. Although Mrs. Roosma may not yet have anticipated all of the long-term consequences of Mr. Roosma's injury prior to their marriage in 2016, Plaintiffs have provided no

support for what amounts to their "continuing harm" theory that would functionally circumvent the general rule, especially where Mr. and Mrs. Roosma, prior to 2015, discussed the possibility of bringing a lawsuit. The argument that a committed intimate relationship, not marriage, is sufficient has been rejected by at least one Washington Court of Appeal. *Vance v. Farmers Ins. Co.*, 1 Wn.App. 2d 1007 (2017). Although *Vance* is unpublished, this Court is not persuaded to depart from precedent directly on point.

To the extent that claims by Plaintiff Elizabeth Roosma are predicated on her loss of consortium, Defendant CCS' motion should be granted and the claims dismissed.

* * *

Therefore, it is **HEREBY ORDERED** that:

(1) Plaintiffs' Motion for Leave to File Excess Pages and Motion for Leave to File 11 Minutes Late (Dkt. 109) is HEREBY GRANTED.

(2) Plaintiffs' request to strike (Dkt. 119) is DENIED.

(3) Defendant CCS' request to strike (Dkt. 117) is DENIED.

(4) Defendant CCS' Motion for Summary Judgment (Dkt. 90) is HEREBY GRANTED IN PART, as follows:

- Sec. 1983 claims (Count One, Count Two): The request to dismiss both claims is denied as moot. *See* Dkt. 1; Dkt. 29. The request to dismiss both claims with prejudice is denied.

- ADA claim (Count Three): Granted. This claim is dismissed against Defendant CCS.

- Rehabilitation Act claim (Count Four): Granted. This claim is dismissed against Defendant CCS.

- WLAD claim (Count Five): Granted. This claim is dismissed against Defendant CCS.

- Negligence (Count Six): Granted. This claim is dismissed against Defendant CCS.

- Outrage (Count Seven): Granted. This claim is dismissed against Defendant CCS.
- Loss of consortium claims by Plaintiff Elizabeth Roosma are dismissed.

Because there remain cross-claims pending against Defendant CCS, Defendant CCS is not dismissed from the case.

IT IS SO ORDERED.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 8th day of February, 2018.

*[signature]*

ROBERT J. BRYAN
United States District Judge